# Dull's Appeal.

1. A. was in possession of certain real estate for which he had title. B. held a recorded, invalid tax deed for the same, and asserted his title but brought no action.  The evidence of the invalidity of B.'s title rested entirely in parol.  *Held*, that a court of equity had jurisdiction to remove the cloud from A.'s title by decreeing the surrender and cancellation of B.'s tax deed.

2. Whenever a deed or other instrument exists which may be vexatiously or injuriously used against a party, after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings, a court of equity will afford relief by directing the instrument to be delivered up and cancelled, or by making any other decree, which justice or the rights of the parties may require.

3. The jurisdiction of the Court of Equity to remove clouds from title is an independent source or head of jurisdiction, not requiring any accompaniment of fraud, accident, mistake. trust, or account, or any other basis of equitable intervention.

[Dull's Appeal.]

February 2d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Fayette county :* In Equity : Of January Term 1886, No. 191.

This was an appeal by Jacob Dull from a decree of said court dismissing his bill, wherein John W. McDowell was defendant.

The following is an abstract of the plaintiff's bill:

1. That your orator is now, and has been for five years last past, continuously a resident of Connellsville borough, in said county.

2. That your orator owned a lot of ground in said borough, during the whole of the year 1879, and now owns and has the same in his possession.

3. That in July, 1879, your orator began the building of a house on the said lot and finished the said house in the latter part of the said year, when your orator began his residence therein, and the said house has been continuously occupied ever since by a family residing therein.

4. That E. V. Goodchild was the collector of state and county taxes for said borough in the year 1879, and that on the 23d day of January, 1880, he made, as such collector, his official return to the commissioners of said county that he had not collected and could not collect the sum of sixty-three cents, county tax charged on said lot for the year 1879.

5. That upon said return by the said collector, the commissioners of the said county directed the same to be sold for the said tax; whereupon the said lot was duly advertised as unseated land, and sold by the treasurer of the said county on the          day of June, 1882, to John W. McDowell, the respondent above named, to whom a deed for the said lot was executed and delivered by the said treasurer, on the 7th day of September, 1882.

6. That the sale ought never to have been made, because, 1st, your orator resided in said borough as aforesaid; 2d, your orator owned a large amount of personal property in said borough; 3d, there was personal property on said lot during the year 1879, out of which the tax could have been made; 4th, your orator or his tenants resided on said lot from September, 1879, to the present time.

7. The said respondent holds the said deed, claims the same to be a good title, and asserts his ownership of the same premises thereunder.

Your orator therefore prays your Honor to make a decree that the said sale passed no title to the respondent, and that the said deed be delivered up to your orator to be cancelled.

For such other and further relief as to right and justice may belong, and to your Honor may seem meet.

The following is an abstract of the defendant's answer:

1. I have no knowledge of the truth or falsity of the allegations contained in the first paragraph of the bill.

2. I do not admit or deny the allegations contained in the second paragraph of plaintiff's bill, because I do not know to what lot of ground he refers, but if he refers to the same lot of ground as in paragraph fifth, then I deny that he is the present owner of said lot of ground.

3. I deny the allegations contained in the third paragraph of plaintiff's bill.

4. I admit the allegations contained in the fourth paragraph of plaintiff's bill.

5. I admit the allegations contained in the fifth paragraph of plaintiff's bill.

6. I deny that said sale ought never to have been made, as alleged in the sixth paragraph of plaintiff's bill, and deny that there was personal property on said lot during the year 1879, out of which the tax could have been made, deny that plaintiff or his tenants resided on said lot from September, 1879, to the present time, and aver that the plaintiff had notice that said lot of ground had been returned as unseated land before the same was sold by the county treasurer for taxes, and disregarded the same, and aver, further, that said plaintiff had notice to redeem said lot of ground after the same had been sold, and before two years had elapsed from the sale thereof, which notice he disregarded.

7. I admit the allegations contained in the seventh paragraph of plaintiff's bill.

8. I deny that plaintiff is entitled to equitable relief, and pray that the bill of plaintiff be dismissed, and I be allowed my costs.

The plaintiff joined issue on the matters alleged in the answer.

The bill and answer were referred to W. G. Guiler, Esq., as Examiner and Master, who found and reported the following facts:

1. That Jacob Dull, the plaintiff, bought the lot of ground in controversy from the assignee of Joseph Johnston in May, 1879, and secured a deed therefor.

2. That in July thereafter he placed a fence around it enclosing the ground the following year.

3. That in August, 1879, the plaintiff commenced building a house on the lot of ground and finished it in October of the same year.

[Dull's Appeal.]

4. That the plaintiff moved into the house about the time it was finished, and lived there until August, 1882.

5. That after he moved out it was occupied by persons as his tenants.

6. That at the time E. V. Goodchild, the tax collector, returned it as unseated land, the plaintiff owed sixty-three cents tax on the same, but there was sufficient personal property on the premises to make the tax.

7. That the proceedings prior to the sale were irregular.

8. That the defendant has not attempted to make good his title in any way, nor has he attempted to assert his ownership of the premises other than what he stated in his answer filed to plaintiff's bill. The question to be determined in this case is whether, under all the facts, as found by the Master, the plaintiff is entitled to the equitable relief asked for by him in his bill of complaint. In Barclay's Appeal, 12 Norris, 53, Justice GORDON, in delivering the opinion of the Court, says: "If there is anything in the equity practice of Pennsylvania it is that a Court cannot by bill bring before it parties having adverse claims to land between whom there is no relation of trust or contract, and settle their several titles by decree, and more than this, we know of no power in equity or elsewhere, by which the owner of an adverse title can be called into Court by the party in possession to assert and defend that title on penalty of forfeiture should he refuse to do so." Hence, it seems to be the rule in this State, that in the absence of any relation of trust or contract, or where there has been no fraud on the 'part of the holder of an adverse title, the parties are left to their legal remedies.

  *  *  *  *  *  *  *  *  *

Hence, the Master is of the opinion that this is not a case in which a Court of Equity ought to exercise its power, and therefore, the relief asked for by the plaintiff should be refused and the plaintiff's bill dismissed, and at his costs.

The plaintiff filed exceptions to the report. After hearing, the Court, INGHRAM, P. J., entered the following decree:

The exceptions to the report of the Master are dismissed; the report is confirmed. It is further ordered, adjudged and decreed that the plaintiff's bill be dismissed, and that the said plaintiff pay the costs of this proceeding.

The plaintiff thereupon took this appeal, assigning said decree for error.

*Edward Campbell*, for appellant.—The appellant's point in the Court below, was to invoke the aid of a chancellor to remove a cloud from his title, but the Master and the Court below informed him that although a cloud on his title existed,

3 AMERMAN—33

it could not be removed unless some relation of trust or contract subsisted between himself and the holder of the cloud.

Whenever a deed or other instrument exists, which may be vexatiously or injuriously used against a party after the evidence to impeach it or invalidate it, is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a Court of Equity will afford relief by directing the instrument to be delivered up and cancelled, or by making any other decree which justice and the rights of the parties may require : Morton *v.* Graves, 5 Allen, 601.

There are no authorities in conflict with this, and the appellant maintains that, without a dissenting voice, except that of the Court below, the following decisions carry the foregoing principles as stated by him, into effect : Thompson's Appeal, 42 Leg. Int., 214 ; Wilson *v.* Getty, 7 P. F. S., 266 ; Stewart's Appeal, 28 Id., 88-96 ; Kennedy *v.* Kennedy, 7 Wr., 413 ; O'Neil *v.* Hamilton, 8 Id., 18.

*A. D. Boyd,* for defendant in error.—" If there is anything certain in the equity practice of Pennsylvania, it is that a Court cannot by bill bring before it parties having adverse claims to land, between whom there is no relation of trust or contract, and settle their several titles by decree : " Barclay's Appeal, 12 Norris, 54.

Mr. Justice GREEN delivered the opinion of the court, October 4th, 1886.

The Master found as facts in this case that the plaintiff held title to the land in question by deed from the assignee of the former owner, that he subsequently occupied the land, built a house upon it, in which he dwelt from October, 1879, to August, 1882, and from that time on he was in possession by his tenants. He also found that when the land was sold as unseated land for taxes, the plaintiff owed sixty-three cents taxes, but that there was personal property on the premises sufficient to make the tax. This tax title, which the defendant bought and took and held a deed for, was therefore apparently an invalid title. Nevertheless, the defendant had the deed recorded, and, by his answer to the plaintiff's bill, claims title under the treasurer's deed in himself, and denies the matters of fact which are alleged in the plaintiff's bill as the grounds of the invalidity of the defendant's deed. These are, 1st, that at the time of the tax sale the plaintiff resided in the borough where the land is situated ; 2d, that the plaintiff owned a large amount of personal property in said borough ; 3d, that there was personal property on the lot, out of which the tax could have

been made, and 4th, that the plaintiff was in possession of the premises from 1879 to the time of filing the bill. All these are matters of fact resting in parol, and the evidence to prove them dies with the witnesses who know them. The plaintiff is in possession, and therefore cannot bring an action of eject- ment to recover the land or prove his title. The treasurer's deed is regular on its face, and in accordance with the re- quirements of the law, so far as can be judged by anything apparent in its language. The Master found that the de- fendant had not asserted his title, except as stated in his an- swer, but it cannot be doubted that it is there asserted em- phatically and adversely. What, then, is the plaintiff's situa- tion? He is prevented from establishing his title by any pro- ceeding at law, but he is threatened with an adverse paper title placed upon record by the defendant, and by him asserted and pleaded in a judicial proceeding. It is beyond all ques- tion that the defendant's deed is a cloud, and a serious one, upon the plaintiff's title. Unless he can remove the cloud by the present proceeding he is without remedy. The Master held that no relief could be granted because there was no rela- tion of trust or contract between the parties, and cites Bar- clay's Appeal, 12 Norris, 53, as authority. The Court below sustained this conclusion, though without an opinion. A very slight examination of Barclay's Appeal shows that it was not a case in any respect like the present, or raising the same ques- tion. There was no claim of adverse title to the plaintiff's land, and the bill was brought to obtain a decree for the re- moval of certain machinery from the premises of the plaintiff. The remarks quoted from the opinion were made in reference to the facts of that case, and are entirely correct as expressing the general state of the law upon the subject named. But they did not affect to discuss, or even state, the law upon the subject of the equity jurisdiction to remove clouds upon title, and could not have been so intended without conflicting with repeated decisions of this Court. Not a single authority was cited, either by the counsel concerned or in the opinion of this Court, nor was any proposition expressed respecting this kind of equity jurisdiction.

Our own cases show that we have adopted, and fully recog- nize, the equity jurisdiction to remove clouds upon title, as fully and as broadly as it is described in the equity text books and decisions. Thus in Kennedy v. Kennedy, 7 Wr., on page 417, Mr. Justice STRONG said: "And there are very many cases analogous to bills of peace, in which a chancellor has in- terfered to quiet the enjoyment of a right, or to establish it by a decree, or to remove a cloud from the title. Indeed, this is one of the well recognized branches of equitable juris-

diction, though its extent is not clearly defined." This was said in a case in which there was no relation of trust or contract, and the title was legal only. Relief was denied for want of proof, but not for want of jurisdiction. The same remark is true of the case of Stewart's Appeal, 28 P. F. S., 88, in which the late Chief Justice SHARSWOOD sums up a discussion of the subject thus: "The best expression of the rule, as it seems to me, is to be found in an opinion of the Supreme Court of Massachusetts, in Martin *v.* Graves, 5 Allen, 661, by MERRICK, J.: "Whenever a deed or other instrument exists, which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a court of equity will afford relief by directing the instrument to be delivered up and cancelled, or by making any other decree which justice or the rights of the parties may require." It will be observed that the rule thus stated is without any limitation to cases of trust or contract. In the principal case of Martin *v.* Graves there was no relation of trust or contract between the parties to the suit, and the titles claimed by the respective parties were legal only. The plaintiffs alleged fraud in the defendants in procuring the deed sought to be set aside, but the jurisdiction was not put upon the ground of fraud, but on the general ground of cloud upon the plaintiff's title. In 2 Story Eq., § 700, the writer, after stating the jurisdiction to be undoubted, says: "If an instrument ought not to be used or enforced, it is against conscience, for the party holding it to retain it, since he can only retain it for some sinister purpose. . . . . . If it is a deed purporting to convey lands, or other hereditaments, its existence in an uncancelled state necessarily has a tendency to throw a cloud over the title." In the first note (*a*) entitled, "Cloud upon title," the annotater has discussed the whole subject of equitable jurisdiction upon this ground, gathering together and classifying a great number of decisions, English and American, illustrating the circumstances in which relief will be given or refused. He says on p. 12 (edition of 1886): "Assuming, however, that the plaintiff is in a position to ask for relief, he will be entitled to it upon establishing the existence of any such facts as the following: 1. An invalid deed or instrument relating to the title to land, the invalidity of which does not appear therein; as e. g., an invalid tax deed or receipt," citing a number of cases among which is Russell *v.* Deshon, 124 Mass., 342. Upon referring to this case it is found to be identical in principle and almost identical in its facts with the present case. The defendant bought the plain-

tiff's land at a tax sale for non-payment of taxes. The plaintiff alleged that he did not know the tax was unpaid, but supposed it was paid when he acquired his title. He applied to the defendant to release his tax title, but the latter refused to do so, and the plaintiff then filed a bill to remove the cloud on his title and compel a release. It happened that the tax title was invalid because the sale was made more than two years after the warrant to collect the tax was issued. The bill was demurred to for want of equity, but the Court overruled the demurrer and granted the relief prayed for. On p. 344 the Court say: "The collector's sale was therefore void, and his deed conveyed to the defendant no valid title. But as the defendant has caused the deed to be recorded, and refuses to release to the plaintiff, and claims that he owns the premises, the collector's deed to him creates a cloud on the plaintiff's title. The plaintiff having continued in possession of the premises since he took his deed in November, 1875, cannot try his title by writ of entry, and can maintain a bill in equity to remove the cloud from his title."

In Cloustan v. Shearer, 99 Mass., it was held that a person in possession of land, and taking the rents and profits, may maintain a bill in equity to quiet his title against one who, as to him, is dispossessed and disseized, but asserts an adverse title under a mortgage, the validity of which is denied by the plaintiff.

The same doctrine was applied in the case of a mortgage of personal property in Shearman v. Fitch, 98 Mass., 59, and the Court said in the opinion sustaining the bill: "But where a title to real estate is claimed, against which there is no present recovery by action at law, a bill in equity may be maintained to set it aside."

In Hayward v. Dimsdale, 17 Ves. Jr., 111, Lord Chancellor ELDON held that there was jurisdiction in equity to order a deed forming a cloud upon the title to be delivered up, though the deed is void at law.

In 3 Pomeroy's Equity Jurisprudence, § 1398, it is said, "the jurisdiction to remove clouds from title is well settled; the relief being granted on the principle quia timet, that is, that the deed or other instrument or proceeding constituting the cloud may be used to injuriously or vexatiously embarrass or affect a plaintiff's title." In the foot notes very numerous cases are collected, the substance of them being thus expressed: "When the estate or interest to be protected is equitable, the jurisdiction should be exercised whether the plaintiff is in or out of possession; but when the estate or interest is legal in its nature, the exercise of the jurisdiction depends upon the adequacy of legal remedies. Thus, for exam-

ple, a plaintiff out of possession holding the legal title will be left to his remedy by ejectment under ordinary circumstances, . . . . . but when he is in possession, and thus unable to obtain any adequate legal relief, he may resort to equity (citing many cases). When, on the other hand, a party out of possession has an equitable title, or when he holds the legal title under circumstances that the law cannot furnish him full and complete relief, his resort to equity to have a cloud removed ought not to be questioned," quoting numerous decisions.

The references to authorities may be closed with a single citation from one of our own cases, Eckman *v.* Eckman, 5 P. F. S., 269, in which we said, WOODWARD, C. J.: "Not only are accident, mistake and fraud recognized grounds of relief, but if an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can only retain it for a sinister purpose; and, according to Judge STORY, the modern decisions entitle him to relief, *quia timet:* 1 Story Eq., § 700." In none of the cases have we been able to discover that this kind of relief has been withheld, unless there was a relation of trust or contract between the parties. The jurisdiction has been asserted and enforced as an independent source or head of jurisdiction, not requiring any accompaniment of fraud, accident, mistake, trust or account, or indeed any other basis of equitable intervention. Of course, it must be exercised only in plain cases, and with much care, and not at all where the party has an adequate remedy at law. But where there is no adequate legal remedy available to the party, and the facts are clearly such that he ought to be relieved, there can be no doubt of his right to relief in equity in the manner invoked in the present case.

We are of opinion that upon the facts found by the Master, and upon the testimony taken before him, the plaintiff is entitled to be relieved against the tax deed held and set up by the defendant. We regard the deed as invalid. It is most certainly a serious cloud upon the plaintiff's title. The defendant asserts it, but brings no action upon it, the plaintiff is in possession and therefore can bring no ejectment; his evidence to prove the invalidity of the defendant's deed rests in parol and may be lost, and the defendant's deed may be used vexatiously and injuriously to his disadvantage. These being the clear facts of the case, the plaintiff is entitled to relief by having the defendant's deed delivered up to be cancelled.

Now, to wit, October 4th, 1886, the decree of the Court below is reversed at the cost of the appellee, and it is further ordered, adjudged and decreed that the plaintiff's bill be

reinstated, and that the defendant do forth-with surrender and deliver up to the plaintiff for cancellation the treasurer's deed, held by him from Levi Bradford, treasurer, dated the seventh day of September, A. D. 1882, and mentioned in the plaintiff's bill, and that the plaintiff do thereupon pay to the defendant the purchase money ($4.30) four dollars and thirty cents, paid for the land, and the fees paid for recording the same, and interest on both sums from the date of their payment; and further that the costs of the case, other than the costs of this appeal, be paid equally by the parties.

GORDON, J., dissents.