# Robb *v.* New York and Cleveland Gas Coal Company, Appellant.

*Mines and mining—Life estate—Damages—Misconstruction of instrument —Treble damages.*

Where a grantee under a deed in fee simple of land on which is an open coal mine, agrees in writing that his grantors "shall have the privilege and right to remain on said property during their natural lives, or the natural life of the survivor of them, free from the payment of any rent, taxes, assessments, or encumbrance of any kind," and the grantors occupy the land and continue the mining of coal thereon for eleven years, *Held*, by a divided court that a person claiming under the grantee cannot dispute their life estate in the coal, or their right to exhaust the coal, and if he himself mistakenly construes the instrument under which they claim, and mines the coal on the land, he will be liable to them in treble damages.

*Res adjudicata—Hearing on the merits.*

A claim of res adjudicata cannot be set up where there has been no hearing on the merits of the case.

Argued Oct. 24, 1906. Appeal, No. 65, Oct. T., 1906, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1904, No. 729, on verdict for plaintiff in case of Mary M. Robb v. New York and Cleveland Gas Coal Co. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for the alleged wrongful mining of coal.

At the trial the jury returned a verdict of $5,250, being treble the value of the coal taken.

On a motion for judgment for defendant non obstante veredicto McCLUNG, J., filed the following opinion:

Mary Robb, the plaintiff, sues to recover damages for the mining of coal by the defendant under her farm in Penn and Wilkins townships, Allegheny county.

The mining of the coal by defendant was admitted, and the jury found that it was mined with the knowledge of plaintiff's ownership and was converted to defendant's use, and that the actual value of the coal so taken was $1,750 and the treble value $5,250.

The tract of land contained eighty acres, about twenty-five acres being underlaid with coal, and was conveyed to Mary Robb in fee simple by Thomas Mellon et ux., by deed dated March 1, 1883.

By deed dated February 16, 1884, Mary Robb with William Robb, her husband, conveyed this land in fee to William H. Graham, their son-in-law.

There was, at and before this conveyance, an open coal mine on the land from which coal was being mined, both for use of the occupants of the farm, and for sale to parties in the neighborhood.

By a paper bearing the same date as the deed to Graham, but according to the testimony of Graham executed some months afterward, there was created in Mary Robb the interest around which the contest in this case centers.

This paper was executed in consideration of the conveyance to Graham and in fulfillment of an agreement made at the making of said conveyance, and is executed by Graham and by the Robbs, and after reciting said deed and by reference describing the property proceeds:

" Now this agreement witnesseth, That he, the said Graham, contracts and agrees that the said William Robb and his wife, Mary M. Robb, shall have the privilege and right to remain on said property during their natural lives, or the natural life of the survivor of them, free from the payment of any rent, taxes, assessments or encumbrances of any kind, and the said William Robb and Mary M. Robb to have the rights and privileges as above set forth for and during that time."

By deed dated and acknowledged December 27, 1895, and recorded January 14, 1896, Graham and wife conveyed this land to defendant in fee without exception or reservation, " but with covenants warranting the title and agreeing to indemnify the grantee against damage, costs and expenses arising out of any hostile claims."

Defendant took this conveyance with full knowledge of the above-recited agreement between Graham and the Robbs, and Mr. and Mrs. Robb occupied said farm from 1883 until 1898 when William Robb died, Mrs. Robb continuing to occupy the premises.

During all the time of this occupancy, coal was taken from this open mine by the Robbs and used and sold, the amount running as high as 4,000 bushels a month, until the defendant, who after William Robb's death began to mine the coal from another entry, cut off plaintiff's entry and prevented further mining by her. This was about 1900.

It is manifest that the main question in this case is, did the Graham agreement vest in the Robbs a life estate in said land without restrictions as to the use of the coal?

We need not cite authorities to the effect that a life tenant of a tract of land can work an opened coal mine even to exhaustion, for this is conceded. The extent to which the rule is carried, however, is fully set forth in the two Pennsylvania cases of Neel v. Neel, 19 Pa. 323, and Irwin v. Covode, 24 Pa. 162.

When Graham agreed that these people who had occupied the land as their own for a year should remain on it for life, he certainly meant simply that they should continue to occupy it for their lives in the same way. They were at this time exercising all the rights of exclusive occupants, including the mining of coal, and for at least eleven or twelve years thereafter, continued to so occupy, including the mining, without objection or question. Can there be any doubt about the fact that they were to have all the rights of life tenants?

We have the right to take into account the surrounding circumstances and the conduct of the parties afterward in determining the meaning of this paper: Lemon v. Graham, 131 Pa. 447, and many other cases.

An estate for life is a freehold interest in lands, the duration of which is confined to the life or lives of some particular person or persons or to the happening or not happening of some uncertain event.

In Fay v. Fay, 55 Mass. 93, it was held that a devise of the "use and improvement" of certain land created a life estate.

In McClure v. Melendy, 44 N. H. 469, it was held that the devise of "the use and occupancy of . . . . real estate during his natural life" was a devise of the land for life and not of the income as distinguished from it.

See also McCullough's Est., 12 Pa. 197 ; Criswell v. Grum-

bling, 107 Pa. 408, and Brady Overseers v. Clinton Overseers, 148 Pa. 311.

Defendant's counsel do not, in their argument, appear so much to contest the proposition that the Graham agreement gave the Robbs a life estate, as to press the proposition that it was a life estate shorn of some of its incidents—especially the right to take out the coal.

The first answer to this is the fact that for fifteen years they continued to take out the coal—two-thirds of the time without question.

Defendant's counsel plant themselves upon the case of Waugh's Executors v. Waugh, 84 Pa. 350.

The judge who delivered the opinion in that case well said, "There is room for a conflict of opinion in a case so balanced as this."

The life estate there was created by an exception in his own behalf in the deed of the grantor and it was not held that there was not a life estate, but that its common-law incident as to emblements was taken away by the terms of the grant.

In the present case we have nothing of this nature in the paper creating the estate. The Waugh case was plainly carried in favor of the remainder-man because he was the grantee, and in whose favor a doubtful construction must be resolved.

In the present case Mrs. Robb is the grantee. The deed from the Robbs to Graham was an absolute one in fee simple, and except in so far as it shows a good and valuable consideration, has nothing to do with the paper which creates plaintiff's title.

It contains no such words as are used in the opinion in the Waugh case to illustrate how a life estate may be stripped of its incidents.

To our mind the reasoning of the Waugh case is strongly in favor of plaintiff's contention.

We are unable to fall in with defendant's proposition to the effect that plaintiff has no remedy because the coal was of no use to her unless she took it out, and she failed to take the coal sued for—inasmuch as her failure to do so was caused by the taking of it by defendant. Defendant has nothing to complain of as to the measure of damages. Mrs. Robb being

the life tenant, was the owner of the coal during her life, and could have taken it all out. Any person entering upon the premises was a trespasser as against her, and it matters not that this was a person who would own and come into possession of such coal as she left in place at her death. It might well be argued that she was the owner to whom treble damages for all the coal taken out is given by the Act of May 8, 1876, P. L. 142. Besides the defendant itself demonstrated that all the coal could be taken out during her lifetime. She is yet living, more than five years after the exhaustion of the mine.

In any aspect of the case the verdict as to amount is not unfavorable to defendant.

It is argued that defendant is not liable for treble damages because it did not knowingly take the coal.

This is based not upon the fact that it did not know it was mining within the lines of the Robb farm, but upon its assumption that the Graham agreement did not give plaintiff any title to the coal. It cannot be heard to say that it did not knowingly take plaintiff's coal because it misconstrued her title papers.

If the title depended upon a question of fact this defense would avail, but it will not where it depends simply upon the construction of a written instrument.

We are not dealing with a case like Crawford v. Forest Oil Company, 208 Pa. 5, where the rule of damages is an elastic one, subject, within limits, to the control of the court for the purpose of doing justice as between the parties, but with a penalty fixed by statute applicable to everyone who knowingly mines his neighbor's coal.

It is said, however, that plaintiff's contention was determined adversely to her before this suit was brought.

Upon November 23, 1896, at No. 387, January Term, 1897, of the court of common pleas No. 2, William and Mary Robb filed a bill in equity against W. H. Graham " with notice to the New York and Cleveland Gas Coal Company " in which it averred that the deed from the Robbs to Graham, absolute on its face, was only intended as a security for certain money at the time advanced by Graham to or for them, and that the coal company had taken its deed from Graham with knowledge of the facts.

The prayer was that the deed be declared void save as a security, and that the coal company be restrained from mining, etc.

Upon April 20, 1897, Graham and the coal company filed a joint and several answer, in which they set up that the conveyance to Graham was intentionally made an absolute one, under an arrangement " that the said plaintiffs should be given a right of occupancy of said land during their natural lives, and they are now occupying the said land under said agreement, which was in writing, etc.," and attached a copy of the agreement, it being the paper spoken of in this case as the Graham agreement.

The coal company, the present defendant, further answered that " it claims the legal right to mine and remove said coal whensoever it shall see proper, but that they are amply responsible financially to answer any claim for damages that may be established by said plaintiff."

They then prayed that the bill be dismissed.

Answer and replication were filed—and succeeding that we have nothing except the following docket entry : " December 6, 1897, on trial list and the plaintiff offering no testimony this case is dismissed at the cost of the plaintiff."

To constitute res adjudicata there must be a hearing on the merits of the case. We think it is plain that there was no adjudication here as to the rights of Mrs. Robb under this Graham agreement. There could not properly have been such an adjudication without an amendment of the bill and there was no such amendment. The coal company asked that the bill be dismissed and the plaintiff left to her action for damages, if she had title under this paper. Can this dismissal be construed as more than a granting of that request ?

In addition to this, in 1898 the coal company (present defendant) filed a bill against the Robbs, setting out their claim to the coal under this Graham agreement and asking to have it construed, and this bill was in August, 1898, upon demurrer dismissed, the judge's opinion showing that it was upon the ground that the result aimed at could be attained in an action of trespass if the coal company attempted to mine the coal.

When the coal company filed this second bill it certainly

had no thought that the question raised had been settled in its favor by the first one.

If we did not go to the judge's opinion, which is not strictly a part of the record, we would have here a determination of the question in favor of the present plaintiff.

It seems plain that there was in neither case a hearing upon the merits, as to the rights of Mrs. Robb under the Graham agreement.

Our conclusion is that the plaintiff is entitled to judgment upon the verdict for $5,250 upon payment of the verdict fee, and it is so ordered.

And now, to wit: February 2, 1906, it is ordered that a new trial be refused, and the motion for judgment for defendant non obstante veredicto is denied.

*Error assigned* was in entering judgment on the verdict.

*John P. Hunter,* of *Schoyer & Hunter,* for appellant.—The plaintiff did not have such an estate for life in the property as would give her the right to mine coal to exhaustion : Whitaker v. Brown, 46 Pa. 197; Turner v. Scott, 51 Pa. 126 ; Daugherty v. Marcum, 40 Tenn. 322 ; Chappel v. Row, 9 Pa. 72 ; Waugh v. Waugh, 84 Pa. 350; Cable v. Cable, 146 Pa. 451; Fisher v. Nelson, 8 Mo. App. 90.

The plaintiff had no such estate in the coal as enabled her to maintain an action for its removal by the defendant company.

The plaintiff was not the owner of the coal so as to enable her to recover treble damages : Coleman's App., 62 Pa. 252 ; Tammany v. Whittaker, 4 Watts, 221 ; Edwards v. Hill, 11 Ill. 22.

The defendant acted upon a bona fide belief that it was entitled to the coal, and cannot be subjected to treble damages: Humphrey v. Cooper, 183 Pa. 432; McDonald v. Wood Co., 14 Mont. 88 (35 Pac. Repr. 668) ; Crawford v. Forest Oil Co., 208 Pa. 5 ; Coal Co. v. Rogers, 108 Pa. 147.

The judgment entered in the proceedings in equity at No. 387, January Term, 1897, in which Mary Robb and William Robb, her husband, are plaintiffs, and William H. Graham, with notice to the New York & Cleveland Gas Coal Company,

is defendant, is a bar to this action: Winton's App., 97 Pa. 584; Kelsey v. Murphy, 26 Pa. 78; Westcott v. Edmunds, 68 Pa. 34; Myers v. Coal Co., 126 Pa. 582; Hill v. Joy, 149 Pa. 243; Zook v. Penna. R. R. Co., 206 Pa. 603.

*W. B. Rodgers,* with him *Stewart M. Cunningham,* for appellee.—The Robbs had a life estate in the land: Meigs v. Lewis, 164 Pa. 597; Lemon v. Graham, 131 Pa. 447; Fay v. Fay, 55 Mass. 93; McClure v. Melendy, 44 N. H. 469; Brady Overseers v. Clinton Overseers, 148 Pa. 311; McCullough's Est., 12 Pa. 197; Daly's Estate, 11 W. N. C. 514; Criswell v. Grumbling, 107 Pa. 408.

It being a life estate they had the right to work the coal mine even to exhaustion: Neel v. Neel, 19 Pa. 323; Irwin v. Covode, 24 Pa. 162.

A decree to be conclusive in other cases between the same parties, must have been on the merits of the case: Weigley v. Coffman, 144 Pa. 489; Foster v. Busteed, 100 Mass. 409.

PER CURIAM, January 7, 1907:

The judges who heard this case being equally divided in opinion the judgment is affirmed.