# New York & Cleveland Gas Coal Company *v.* Graham, Appellant.

*Deed—Warranty—Covenant for quiet enjoyment—Defect in title— Cloud on title—Mortgage—Evidence—Equity.*

1. The mere fact that the grantee in a deed containing a general warranty and a covenant for quiet enjoyment had knowledge of an existing defect in the title at the time he accepted, does not of itself impair the covenants. Such fact is a circumstance to be considered when it becomes a question whether it was understood and intended that the covenants were to extend to that particular defect, and the truth with respect to this may always be shown.

2. When the covenants in a deed are general with nothing expressly excepted, the burden is on the grantor who seeks to escape from a liability fairly covered by the general terms of the covenants to show that his grantee accepted the title notwithstanding the defect, and, cum onere.

3. The general covenant of warranty may be broken as soon as made. The existence of a better title with an actual possession under it in another, is of itself a breach of this covenant.

4. A covenant for quiet enjoyment is broken by the very commencement of an action on the better title.

5. Where a grantee of land under a deed containing a general warranty and a covenant for quiet enjoyment takes the land subject to a mortgage which can only be paid off after the death of a living person, and such grantee is compelled to pay treble damages for mining coal, to the owner of a better title, and such damages are in excess of the

amount of the mortgage, the grantee is entitled to maintain a bill in equity against the grantor to cancel the mortgage which he holds on the land.

*Words and phrases—Maxims—Ignorance of the law—Deed.*

6. The rule ignorantia juris neminem excusat does not apply to a matter of law arising upon the doubtful construction of a grant.

Argued Oct. 21, 1909. Appeal, No. 124, Oct. T., 1909, by defendant, from decree of C. P. No. 3, Allegheny Co., Feb. T., 1908, No. 427, on bill in equity in case of The New York & Cleveland Gas Coal Company v. W. H. Graham. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity to cancel a mortgage and quiet title.

MILLER, J., specially presiding, found the facts to be as follows:

### FINDINGS OF FACT.

1. On December 27, 1895, W. H. Graham, the defendant, and Lizzie, his wife, conveyed to the plaintiff company, a corporation, a tract of land in Penn and Wilkins townships, containing about eighty acres underlaid with coal, for the consideration of $6,173.75; in addition to which the plaintiff assumed the payment of a mortgage on the premises of $1,643.75, all of which is shown in the deed between the parties. The above-named purchase money seems all to have been paid or provided for save the sum of $2,530, for which the plaintiff gave to the defendant a purchase-money mortgage, interest payable semiannually, the principal to be paid two years after the death of William Robb and Mary Anne Robb, his wife, or the survivor of them, as appears by said purchase-money mortgage on which mortgage there still remains due the sum of $1,900 with interest from June, 1905.

In addition to the covenants of general warranty contained in the said deed there was also a covenant for quiet possession, and likewise a covenant of indemnity, as follows:

"And the said William H. Graham, and Lizzie Graham, his wife, parties of the first part, for themselves, their heirs, exec-

utors and administrators, do covenant to and with the said New York & Cleveland Gas Coal Co., its successors and assigns, by these presents, that it, the said New York & Cleveland Gas Coal Co., its successors and assigns shall and may from time to time, and at all times forever hereafter, peaceably and quietly have, hold, and enjoy all and singular the said premises hereby granted and released, without the hindrance, denial or interruption of any person or persons lawfully claiming or to claim any right, title, estate or interest at law or in equity in, to, or out of the same, or any part thereof. And they, the said William H. Graham, and Lizzie Graham, his wife, parties of the first part for themselves, their heirs, executors and administrators do further covenant and agree, that they the said William H. Graham and Lizzie Graham, their heirs and assigns, will hold and save harmless and indemnify the said party of the second part, its successors and assigns, of and from all damages, costs, expenses, attorney's fee or other charges that may arise or be caused in consequence or by reason of any claim or any person or persons claiming any right, title, estate or interest at law or in equity, in, to or out of the premises hereby conveyed, or any part thereof, or by reason of any knowledge of the said warranty of quiet possession."

3. Prior to, and at the time of closing said transaction, the plaintiff in the examination of the title found of record the following agreement:

"Know all Men by These Presents, That Whereas William Robb and Mary M. Robb, his wife, of the County of Allegheny and State of Pennsylvania, have this day by deed of even date herewith, sold and conveyed unto W. H. Graham, all that certain tract or piece of land situate partly in Wilkins Township and partly in the Township of Penn, in the County of Allegheny and the State of Pennsylvania, containing 80 acres and 60 perches more fully and at length described in said deed of conveyance, now this agreement witnesseth, That he, the said W. H. Graham contracts and agrees that the said William Robb and his wife, Mary M. Robb, shall have the privilege and right to remain on said property during their natural lives, or the natural life of the survivor of them, free from the payment

of any rent, taxes, assessments or encumbrances of any kind, and the said William Robb and wife, Mary M. Robb, to have the rights and privileges as above set forth of said property for and during that time. Witness our hands and seals this 16th day of February, A. D. 1884." Duly signed by the four parties and sealed and acknowledged. A written notice from William Robb was also served upon the plaintiff at the time protesting against the sale of the coal under said tract and claiming a life estate in the land.

4. The defendant Graham was a son-in-law and his wife, Lizzie, was a daughter of William Robb and Mary Robb. It appears from other proceedings hereafter referred to that Graham, for the purpose of relieving Robb of his pressing liabilities, purchased said farm or tract of land, and as a part consideration therefor, in the nature of a family arrangement, executed the foregoing contemporaneous agreement which he construed to be a mere right of occupancy, with a home, for his father-in-law and mother-in-law during their lives.

5. The plaintiff company and its counsel, with Graham at the time of the purchase, with said agreement before them, construed the same to grant a mere right of occupancy to the Robbs; but in view of its existence and the notice received the special covenants in said deed were inserted therein for the purpose of protecting the plaintiff in the event that the Robbs, or either of them, should have a greater right in said property than the mere right of occupancy of the surface during their lives; the plaintiff purchasing said tract of land for the coal thereunder.

6. At No. 387, January Term, 1897, in the court of common pleas No. 2, of this county, the said Mary Robb and her husband filed a bill in equity against their son-in-law, W. H. Graham, with notice to the plaintiff company, praying that their deed to Graham should be construed as a mortgage. On hearing the bill was dismissed; Graham paying the attorneys' fees in the proceedings. In the fourth paragraph of the plaintiff company's answer in said suit appears the following:

"But the notice which said plaintiff did give was that they were in possession of said land under the agreement hereinbe-

fore referred to and attached to this answer, and the said defendant purchased said property subject to whatever rights said plaintiff might have under said agreement."

7. At No. 232, June Term, 1898, in the court of common pleas No. 1 of the county, the plaintiff company filed its bill against William Robb and Mary, his wife, to restrain them from interfering with its mining of coal under said tract of land. This bill was dismissed on demurrer for want of jurisdiction, the parties being relegated to their action at law.

8. At No. 729, August Term, 1904, in this court, the said Mary Robb brought suit against the defendant company and recovered a verdict on her claim as a life tenant of said land in the sum of $5,250 damages for coal mined by the plaintiff under this tract. This verdict was sustained by a divided court on appeal as reported in 216 Pa. 418.

### CONCLUSIONS OF LAW.

1. The recovery of a judgment against the plaintiff and its payment in the sum of $5,250 in favor of Mary Robb, as set forth in the last finding of fact, constituted a breach of the covenant made by the defendant and his wife of the deed of December 27, 1895.

2. The mortgage of December 27, 1895, given by the plaintiff to defendant, should be decreed satisfied, the defendant to pay the costs.

The court entered a decree canceling the mortgage.

*Error assigned* was the decree of the court.

*R. S. Martin,* with him *W. A. Hudson,* for appellant.—It is well settled that where a vendee with knowledge of the existence of incumbrances accepts a deed with a warranty against them and gives his bond for the purchase money, the continued existence of such incumbrances is no defense to an action on the bond: Fuhrman v. Loudon, 13 S. & R. 386; Lighty v. Shorb, 3 P. & W. 447; Allen v. Getz, 2 P. & W. 310; Roland v. Tierman, 8 W. & S. 193; Bradford v. Potts, 9 Pa. 37; Lukens v. Jones, 4 Phila. 18; Powell v. Barrington, 1 Clark, 239.

The special covenants were against a known defect or incumbrance in the title, viz.: the rights of Mary M. Robb and William Robb in the coal, as determined in Robb v. New York & Cleveland Gas Coal Co., 216 Pa. 418.

Where there is a covenant against a known defect, the vendee may not detain purchase money unless the covenant has been broken: Wilson v. Cochran, 46 Pa. 229.

*Wm. E. Schoyer,* of *Lyon & Hunter,* for appellee.—Equity certainly has jurisdiction to compel the satisfaction of a mortgage which has been fully paid: Fertig v. Henne, 197 Pa. 560; Goldbeck's App., 8 Atl. Repr. 29; Walsh v. Leonard, 8 Luz. Leg. Reg. 282; Prosser v. Guarantee Title & Trust Co., 56 Pitts. Leg. Jour. 215.

In McCune v. Scott, 18 Pa. Superior Ct. 263, it was held that a grantee who had gone into possession and had to pay treble damages for cutting timber to one having the paramount title could hold his grantor on the latter's covenant of warranty.

There is no question but that the appellee suffered great damage from the breach of this covenant, and had thereafter the right to detain the purchase money due, or to become due, on its mortgage. It took a covenant against a known defect, and that covenant has been broken: Lighty v. Shorb, 3 P. & W. 447; Bradford v. Potts, 9 Pa. 37; Wilson v. Cochran, 48 Pa. 107; Jackson v. Juvenal, 14 Pa. 519; Wilson v. Ott, 173 Pa. 253.

OPINION BY MR. JUSTICE STEWART, January 3, 1910:

William H. Graham, the defendant, and Lizzie, his wife, by deed dated December 27, 1895, conveyed to the plaintiff company a tract of land in Allegheny county containing about eighty acres, for the consideration of $6,173.75, the plaintiff, in addition, to assume the payment of an existing mortgage on the premises for $1,643.75. The entire purchase money has been paid excepting $1,900 which remains in the mortgage given defendant as part of the purchase price, and which does not become due until two years after the death of William Robb and Mary, his wife, or the survivor of them. By its

terms, the deed from Graham and wife to the plaintiff company is a present conveyance of the entire estate in the land described, without reservation or exception. It contains not only a clause of general warranty, but several special warranties, one for quiet enjoyment and another for indemnity against disturbance or interruption of any kind. There is nothing equivocal or ambiguous in any of the terms of the deed; nor is any fraud, accident or mistake alleged in connection therewith. Under this deed the plaintiff began to mine coal on the premises conveyed. Mary Robb, surviving her husband, and claiming a life estate in the premises under a conveyance from William H. Graham, earlier in date than the deed to the plaintiff, brought an action in trespass against the plaintiff, to recover triple damages for the coal mined, and recovered a judgment for $5,250. The defense set up was liberum tenementum. On appeal to this court, the case being reported in 216 Pa. 418, the title of Mary Robb to the coal in the tract, as life tenant, with the right to exhaust, was held good, and the judgment was affirmed by an equally divided court. The plaintiff asks in view of this recovery against it, that the defendant be required to cancel and surrender the mortgage which he holds against it for the unpaid balance of the purchase money. The company's right to this release is denied on several grounds; first, because when plaintiff accepted the deed for the property, it had knowledge of the existing earlier deed to Mary Robb, and fully understood that the covenants in its deed were not intended to protect or indemnify against the earlier deed; and, second, that even though the covenants be held to extend to the Mary Robb deed, there has been no breach of any of the covenants which would entitle plaintiff to recover against defendant anything more than nominal damages. With respect to the first: the mere fact that a grantee had knowledge of an existing defect in the title at the time he accepted, does not of itself impair his covenants. Such fact is a circumstance to be considered when it becomes a question whether it was understood and intended that the covenants were to extend to that particular defect, and the truth with respect to this may always be

shown. When the covenants are general, with nothing expressly excepted, the burden is on the grantor who seeks to escape from a liability fairly covered by the general terms of the covenant, to show that his grantee accepted the title notwithstanding the defect, and, cum onere. That is what the defendant here undertook to do; and the first question in the case is, did he offer evidence sufficient to establish the fact? Besides the circumstances adverted to,—the character of the outstanding title, and plaintiff's knowledge of the deed under which it was derived,—there was but a single piece of evidence introduced in support of his claim. William and Mary Robb had been the owners of this tract of land and had conveyed to Graham by deed dated February 16, 1884. On the same day Graham and wife executed a written agreement with Robb and wife, granting to them the privilege and right to remain on the property described in the deed during their natural lives or the natural life of the survivor. In 1897 Robb and wife filed a bill in equity against Graham, with notice to this plaintiff, praying that the deed to Graham should be construed and held to be a mortgage. The answer filed by the plaintiff to the bill contains the following admission, "and the said defendant purchased said property subject to whatever rights said plaintiff might have under said agreement." The agreement here referred to was the agreement between the Grahams and the Robbs. The admission goes so directly to the point, and is so precise and definite in its terms, that if it stood alone and not otherwise explained than by its own language it would certainly go far toward establishing plaintiff's contention. As explained, however, by the president of the company who made it, and the general situation as disclosed by the evidence, it loses entirely the significance it otherwise would have. The fifth finding of the learned chancellor is as follows: "The plaintiff company and its counsel, with Graham, at the time of the purchase, with said agreement before them, construed the same to grant a mere right of occupancy to the Robbs; but in view of its existence and the notice received, the special covenants in said deed were inserted therein for the purpose of protecting the plaintiff in the

event that the Robbs, or either of them, should have a greater right in said property than the mere right or occupancy of the surface during their lives; the plaintiff purchasing said tract of land for the coal thereunder." The evidence which supports this finding was offered and received not to control the effect of the covenant, or to define the extent of the grant to the Robbs, but as interpreting the written admission of the plaintiff in the answer filed to the Robb bill above referred to, and relied on by the defendant. For this purpose it was entirely proper. In the light of this finding, in which we concur, it becomes evident that plaintiff's admission introduced by the defendant, meant no more than that the property had been purchased subject to such rights of the Robbs as plaintiff was advised were expressed in the agreement between them and Graham; that is, occupancy of the surface for life. It was not intended as an admission of any right in the Robbs to the coal. With this out of the case, defendant offered nothing to support the contention that plaintiff bought subject to the incumbrance. The learned chancellor was entirely correct in concluding that the covenants in the deed extended to this particular defect of title. Was there any breach? The general covenant of warranty was broken as soon as made. The existence of a better title with an actual possession under it in another, is of itself a breach of this covenant. "The rule therefore, as best supported by reason and authority, would seem to be this—where at the time of the conveyance, the grantee finds the premises in possession of one claiming under a paramount title, the covenant for quiet enjoyment or of warranty will be held to be broken, without any other act on the part of either the grantee or the claimant; for the latter can do no more towards the assertion of his title, and, as to the former the law will compel no one to commit a trespass in order to establish a lawful right in another action:" Rawle on Covenants for Title, p. 269. So, too, there was a breach of the special covenant which insured to the plaintiff that it "should at all times peaceably and quietly have, hold and enjoy all and singular the said premises without the hindrance, denial or interruption of any person or persons lawfully claiming or to

claim any right," etc. "A covenant for quiet enjoyment," says GIBSON, C. J., in Stewart v. West, 14 Pa. 336, "which resembles the modern covenant of warranty, differs from it in this, that the former is broken by the very commencement of an action on the better title." The plaintiff then being in position to avail itself of its covenants, and having been compelled, because of the outstanding paramount title, to pay in damages double the amount of the mortgage given for the unpaid purchase money, of course there could be no recovery on the mortgage. Why then shall the mortgage, which will not be due until two years after the death of Mary Robb, remain during all this time a cloud upon the plaintiff title? If it be said that as between Graham and the plaintiff it was simply a mistake of law in supposing that the agreement between the former and Robbs granted only a surface right, and that against such mistakes equity does not relieve, a sufficient reply is found in Beauchamp v. Winn, L. R. 6 H. L. 223,—a widely recognized authority governing in cases of this kind,— where Lord CHELMSFORD says: "With regard to the objection that the mistake was one of law, and that the rule ignorantia juris neminem excusat applies, I would observe, upon the peculiarity of this case, that the ignorance imputed to the party was of a matter of law arising upon the doubtful construction of a grant; this is very different from ignorance of a well-known rule of law." He further observes in the same case, that "although when a certain construction has been put by a court of law upon a deed, it must be taken that the legal construction was clear, yet the ignorance, before the decision, of what was the true construction, cannot, in my opinion, be pressed to the extent of depriving a person of relief on the ground that he was bound himself to have known beforehand how the grants would be construed." The relief plaintiff seeks is the removal of a cloud upon its title. Against the menace of this mortgage it cannot immediately protect itself, or maintain its right to defeat the mortgage, by any course of proceeding at law. Under such circumstances equity will afford relief. We need only cite Dull's App., 113 Pa. 510, in support.

In what we have said the questions raised by the assignments of error have all received consideration, and they are overruled.

The appeal is dismissed at the costs of appellant, and the decree is affirmed.