## Epstein v. Van Gilder

*Samuel D. Frederick*, for plaintiff.

*James C. Lanshe* and *Martin J. Coyne*, for defendants.

KOCH, J., December 9, 1957.—On April 4, 1950, defendants conveyed to plaintiff a tract of land situate in the City of Allentown for a consideration of $9,000. On November 1, 1954, plaintiff learned that defendants were not the owners of the entire fee and upon the failure of defendants to deliver a deed for the outstanding interest purchased the same for a consideration of $2,200. The suit in assumpsit seeks to recover this sum together with counsel fees in the amount of $750 and $25 for taxes, revenue and recording. The complaint alleges a breach of warranty contained in the deed from defendants to plaintiff. The

case was tried without a jury and the court now finds the following facts:

### Findings of Fact

1. Plaintiff, David Epstein, is an individual who resides at 1704 Highland Street, Allentown, Lehigh County.

2. Defendants, Rolland Van Gilder and Nettie Van Gilder, are husband and wife and they reside in Hosensack, Lower Milford Township, Lehigh County.

3. Paragraphs 1 to 17, inclusive, of a certain stipulation executed by counsel for plaintiff and defendant and which contain a history of the conveyances and the outstanding interest are incorporated herein by reference.

4. In the early part of 1954, plaintiff obtained a written commitment from The Merchants National Bank of Allentown to place a mortgage of $300,000 upon the premises purchased from defendant by plaintiff upon completion of a building proposed to be erected thereon in accordance with plans and specifications submitted by plaintiff.

5. That the tract of vacant land described in the deed from defendants to plaintiff on April 4, 1950, contained 0.69821 acres.

6. That the consideration paid by plaintiff to defendants was $9,000.

7. In November 1954, plaintiff advised the Merchants National Bank that the building was completed and that he desired the mortgage loan in the sum of $300,000 in accordance with the aforementioned commitment.

8. On or about December 10, 1954, plaintiff advised defendant, Rolland Van Gilder, that a portion of the title to the tract of 0.69821 acres was defective.

9. On or about December 22, 1954, plaintiff advised defendant, Rolland Van Gilder, that the defect con-

sisted of outstanding interests of the heirs of Harry Kuhns, deceased, and requested him to obtain a deed for the same.

10. That in the 0.69821 acres conveyed by defendants to plaintiff, the heirs of Harry Kuhns, deceased, owned a 9/40 interest in a triangular area of 0.07507 acres.

11. That defendants refused to obtain for plaintiff from the heirs of Harry Kuhns, deceased, a conveyance of the 9/40 interest in the triangular area of 0.07507 acres.

12. Thereafter, plaintiff, through his counsel, entered into negotiations for the purchase of the outstanding Kuhns interest in pursuance of which the heirs demanded the sum of $2,000 plus counsel fees of $200 as the consideration for such conveyance.

13. On or about February 25, 1955, plaintiff advised defendants of the terms of the demand made upon him by the Kuhns heirs for a conveyance of their interest and requested defendant, Rolland Van Gilder, to make arrangements to obtain from them, on his behalf, the necessary deed of conveyance in order to complete his title to the said tract of 0.69821 acres.

14. That on or about February 25, 1955, defendants again failed and refused to secure from the Kuhns heirs a conveyance of their outstanding interest in the said premises.

15. On March 3, 1955, plaintiffs paid the sum of $2,200 to the Kuhns heirs in pursuance of their demand and obtained from them a deed conveying a 9/40 interest in 0.07507 acres.

16. The portion of the premises conveyed by defendant to plaintiff in which the heirs of Harry Kuhns, deceased, held an undivided 9/40 interest and which plaintiff purchased to perfect his title, represents 10.75 percent of the total area of the premises.

## Discussion

The deed which defendants delivered to plaintiff on April 4, 1950, contained the customary general warranty clause as follows:

". . . the said parties of the first part, for themselves and their heirs, executors and administrators, do by these presents covenant, grant and agree to and with the said party of the second part, his heirs and assigns, that they, the said parties of the first part, their heirs all and singular, the hereditaments and premises hereinabove described and granted, or mentioned, and intended so to be, with the appurtenances, unto the said party of the second part, his heirs and assigns, against them, the said parties of the first part, and their heirs, and against all and every other person or persons whomsoever, lawfully claiming or to claim the same or any part thereof, shall and will warrant and forever defend."

The parties to this suit are in substantial agreement as to the facts. The basic question is whether plaintiff has produced evidence of an eviction, actual or constructive. It is for that reason that we have not detailed the lengthy stipulation referred to in our third finding of fact.

The obligation in a general warranty of title is not that the covenantor is the true owner or that he is seized in fee, with right to convey, but that he will defend and protect the covenantee against the rightful claims of all persons thereafter asserted: 14 Am. Jur. 532 §69. It is well settled that in order that plaintiff succeed in an action for breach of a covenant of general warranty that an actual or constructive eviction be alleged and proved: Herbert v. Northern Trust Co., 269 Pa. 306; Strong v. Nesbitt, 267 Pa. 294.

In the case at bar it is clear that there was no actual eviction. We believe, however, that there was a con-

structive eviction thus entitling plaintiff to a recovery in this action.

A constructive eviction occurs when, upon the assertion of the superior title, the covenantee, instead of yielding possession to the hostile claimant, buys in such title, or accepts a lease from the holder thereof: Tiffany, Real Property, Third Ed., §1013. This general rule has sometimes embraced the reasoning that one may voluntarily yield to an outstanding paramount title, when called upon to do so, without waiting to be sued. See cases cited, 14 Am. Jur. 535 §72.

Defendant contends that there was nothing more than an assertion of paramount title. We cannot agree with this view. Plaintiff, discovering the outstanding 9/40 interest after the construction of a costly building, could do nothing more than protect himself. The Kuhns heirs did do something more than assert their title; they demanded a sum far in excess of the reasonable value of their interest, at least it was unreasonable in the light of the total consideration of $9,000 paid to defendant. We believe that the demand in itself is sufficient to regard the Kuhns heirs as "hostile claimants". It would be unrealistic to hold that plaintiff upon discovery of the title defect should await the inevitable day when he would be sued. Had he not yielded to the paramount title and awaited an actual eviction, upon a suit to recover damages from defendant, the amount of his recovery would have been greater than in the situation where suit is instituted on the theory of a constructive eviction. The problem faced by this plaintiff was similar to the one which confronted plaintiff in Hauck v. Single, 10 Phila. 551, wherein the court made this observation:

"Plaintiffs did in this case, what we believe they had a right to do, purchased the superior disturbing title, and benefitted not only themselves, but the defendants also, and are now entitled to recover."

We are of the opinion that plaintiff unquestionably was faced with such circumstances as to induce a well founded belief that the rights of the Kuhns heirs would be enforced. Having yielded under this menace he may be said to have suffered an involuntary loss of the possession under his defective title. When a paramount title is asserted by such acts, a constructive eviction takes place, and the covenantee may abandon the possession, or purchase in the adverse title, and retain his remedy upon the covenant of warranty. See cases cited 172 A. L. R. 32.

Unfortunately, the cases which have been called to our attention, and those which our own research has disclosed, fail to spell out a precise definition of a constructive eviction.

In People's Coal Co. v. Long, 22 Dist. R. 145, defendant conveyed land to plaintiff by a deed containing a general warranty provision. Subsequently, plaintiff discovered that defendant's mother had a life interest under the will of his father and that she was living at the time of the conveyance to plaintiff but had not joined in the deed or executed a release. Upon defendant's refusal to obtain a conveyance to plaintiff of his mother's outstanding interest, plaintiff negotiated with her and secured a deed. The court regarded the mother's acts as an assertion of title in hostility to plaintiff and permitted a recovery. Judge Swearingen in that case said:

"There cannot be any doubt that there was a constructive eviction. Sarah Long's title was paramount to that of the plaintiff. There is no denial that she asserted it in hostility to the plaintiff. There was, therefore, but one of two things for it to do—either surrender to her or settle with her. It chose the latter, and, after notice to the defendant, made the best terms with her possible. This, under the authorities, constituted

an eviction: New York and Cleveland Gas Coal Co. v. Graham, 226 Pa. 348."

Having concluded that plaintiff is entitled to recover we are faced with the problem of the measure of damages. While it is true that plaintiff was forced to expend the sum of $2,200 to protect himself and avoid possible future litigation involving real estate of the value of several hundred thousand dollars, the rule in Pennsylvania does not permit the recovery urged by plaintiff. The case of Mengel v. Williamson, 50 Pa. Superior Ct. 100, held that in the absence of fraud, the measure of damages for breach of warranty of title or seisen as to part only of the land conveyed is the "relative value" which the part bears to the whole, and this is to be estimated with regard to the price fixed by the parties for the whole. See also Herbert v. Northern Trust Co., supra; Fuller v. Mulhollan, 40 Pa. Superior Ct. 257.

Since no fraud was alleged or proved, the measure of damages in this case is $217.67. This sum is arrived at by determining that the "defective title" portion is 10.75 percent of the entire tract. Since the consideration was $9,000, plaintiff would have suffered a loss of $967.50 if plaintiff had no interest whatsoever in it. However, since the defect was as to a 9/40 interest only, the damages are accordingly that portion of $967.50 or a total of $217.67.

We can find no basis for the recovery of attorney fees and the other costs averred. No Pennsylvania case has been called to our attention where a recovery of these items was allowed in these circumstances. Even where a covenantor had been notified to appear and defend and refused to do so, whereupon the warrantee employed counsel and defended the case, no recovery for counsel fees was permitted. This was the rule in Terry's Executors v. Drabenstadt, 68 Pa. 400, and

remains the applicable principle today. While the weight of authority may be otherwise in other jurisdictions, those cases seem to permit a recovery only where the covenantee has been subjected to some type of suit by the holder of the adverse interest. See 14 Am. Jur. 586 §159.

Our decision is based upon the following:

### Conclusions of Law

1. That the failure of defendants to convey the outstanding 9/40 interest of the heirs of Harry Kuhns, deceased, constitutes a breach of the covenant of general warranty contained in defendants' deed to plaintiff.

2. The gravamen of an action on a covenant of general warranty contained in a deed is not only a defect in the title granted but an eviction consequent upon it.

3. A right of action for breach of general warranty arises when a constructive eviction takes place and the assertion of title by the Kuhns heirs and demand for payment constitutes such constructive eviction of plaintiff from that portion of the premises in which they held such interest.

4. Plaintiff is entitled to recover the sum of $217.67 which is the relative value which the outstanding 9/40 interest bears to the whole acreage and this is to be estimated upon the basis of the consideration paid by plaintiff to defendant.

5. Plaintiff is not entitled to recover any sums paid for counsel fees nor other costs incurred in securing from the owners of the 9/40 interest a deed conveying their interest to plaintiff.

6. David Epstein, plaintiff, is entitled to judgment against Rolland Van Gilder and Nettie Van Gilder in the amount of $217.67 with interest thereon from March 3, 1955.

## Order

Now, December 9, 1957, the foregoing decision is ordered filed and unless exceptions are filed thereto within 30 days after notice of such filing to counsel for defendants, judgment may be entered in favor of plaintiff and against defendants, Rolland Van Gilder and Nettie Van Gilder, in the amount of $217.67 with interest from March 3, 1955.